**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| KAREN D. METTENBERGER, | ) | CASE NO:      4:07-cv-01832 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE KATHLEEN M. O'MALLEY |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| MICHAEL J. ASTRUE, | ) | NANCY A. VECCHIARELLI |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | **REPORT & RECOMMENDATION** |

Plaintiff Karen D. Mettenberger ("Mettenberger") challenges the final decision of the

Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Mettenberger's

claim for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title

II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, *et seq*.  This Court has

jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States

Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and

Recommendation.

For the reasons set forth below, the Magistrate Judge recommends that the final decision

of the Commissioner be AFFIRMED.

## I.  Procedural History

On May 24, 2002, Mettenberger filed an application for POD and DIB alleging a disability onset date of June 11, 1999, and claiming she was disabled due to multiple sclerosis ("MS"), hand tremors, deteriorating vision, and deteriorating muscle strength.  Mettenberger's application was denied initially and upon reconsideration.  Mettenberger timely requested an administrative hearing.

On April 10, 2006, Administrative Law Judge Robert S. Habermann ("ALJ") held a hearing attended by Mettenberger, who was represented by counsel.  John Newman was called as the vocational expert ("VE") but did not testify.  On May 16, 2006, the ALJ found Mettenberger was able to perform her past relevant work, and therefore, was not disabled.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.  Mettenberger filed an appeal to this Court.

On appeal, Mettenberger claims the ALJ erred by (1) failing to adopt the opinion of a treating physician and (2) failing to conduct a proper analysis of Mettenberger's MS.

## II.  Evidence

*Personal and Vocational Evidence*

Born on November 7, 1954 and age forty-four (44) as of her date last insured, Mettenberger was a "younger" person at that time.  *See* 20 C.F.R. § 404.1563(c).  Mettenberger has a high school education, attended college for two years, and past relevant work as meat wrapper, waitress, and bakery assistant.

*Medical and Evidence*

On February 4, 1997, Sudhir Malik, M.D., first saw Mettenberger.  (Tr. 119.)

2

Mettenberger complained of episodes of vision loss, weakness, pain, and headaches that had occurred five or six times since May 1996. *Id*. Dr. Malik opined that Mettenberger's physical examination was "entirely normal" and did not recommend any treatment at that time. (Tr. 120.)

On March 25, 1998, Dr. Malik again saw Mettenberger and noted continued leg weakness and "probable MS." (Tr. 115.)

On June 23, 1998, Rock Heyman, M.D., saw Mettenberger upon referral from Dr. Malik and, after examination, concluded that she indeed had MS. (Tr. 346-47.) Dr. Heyman averred that Mettenberger had a "relapse, remitting type disease" as suggested by "multiple different episodes, multiple lesions present on her MRI brain scan." *Id*. Dr. Heyman also made the following observations: "[e]xtraocular movements, facial movement, sensation and tongue and palate movement [were] normal"; "[m]otor examination reveal[ed] normal bulk, tone and strength; "[s]uperficial abdominals [were] decreased on the right and normal on the left"; [t]oes are downgoing to plantar stimulation"; "[s]ensory examination reveal[ed] vibration to be decreased in the right arm and leg"; "[p]in prick is decreased in the right trunk on down"; "[c]oordination is good on finger-to-nose, toe-to-finger and tandem gait"; and "[s]he could hop on either side." *Id*.

On March 16, 1999, Dr. Heyman observed that Mettenberger had been receiving weekly beta interferon 1a injections since July of 1998 and was also taking hormones. (Tr. 366.) Mettenberger complained of extended headaches after her injections, but believed her "MS is doing well" and she was satisfied with her medications. *Id*. She denied suffering from any new exacerbations or increased deficits. *Id*. Dr. Heyman observed that Mettenberger's "MS [was] doing adequately." *Id*.

3

On June 8, 1999, Mettenberger visited Stephen Kuruc, M.D.  (Tr. 140.)  On June 8, Dr. Kuruc noted that Mettenberger had been diagnosed with MS in the past twelve months and had been receiving Avonex injections weekly.  *Id*.  Dr. Kuruc recommended a stress echo test.  *Id*.  Mettenberger reported that she was "able to walk without difficulty."  *Id*.  Dr. Kuruc found no evidence of adenopathy or thyromegaly and noted that Mettenberger should return in one year for a routine follow up and "remain in close follow up with Dr. Heyman who had been seeing her every six months.  *Id.*

On July 7, 1999, Mettenberger underwent a maximal stress test that was terminated due to shortness of breath and fatigue.  (Tr. 139.)  During the test, Mettenberger did not experience any chest discomfort or arrhythmia.  *Id*.  Dr. Kuruc opined that the test yielded an "almost certainly false positive."  *Id*.  Dr.Kuruc's impression was "probable normal maximal stress test with an adequate exercise capacity."  *Id*.

On May 11, 2000, Dr. Heyman again saw Mettenberger and observed that "her multiple sclerosis [was] doing well," and scheduled her for follow-up in six months or as needed.  (Tr. 324.)

On September 1, 2000, William Bartolovich, O.D., saw Mettenberger for a complete eye examination.  (Tr. 173.)  At that time she described "her general health as being good, and reported "very few ocular/visual complaints other than she fe[lt] her near vision [was] blurring" (Tr. 173.)  She had a history of chronic open angle glaucoma.  *Id*.  Dr. Bartolovich noted that Mettenberger should be seen every six to twelve months for routine eye examination and evaluation of her optic nerve status.  *Id*.

On November 17, 2000, Mettenberger told Dr. Heyman that she had noticed a "gradual

4

increase since May of her neurologic symptoms, including an increase in her baseline fatigue with non-refreshing sleep." (Tr. 186.)  Mettenberger felt "generally weaker with increased paresthesias in her feet, increased weakness in her legs," and intermittent blurred vision in her right eye. *Id*.  Dr. Heyman agreed that Mettenberger had experienced an increase in her symptoms, but reported no change in her examination results. (Tr. 186-87.)  Mettenberger continued to receive treatment from Dr. Heyman through December 16, 2002.

On July 8, 2002, Dr. Bartolovich noted that "[t]here was very little change in [Mettenberger's] prescription from September 2000," and recommended that she be seen annually to monitor her MS, intraocular pressure, and lenticular changes. (Tr. 172.)

On August 26, 2003, Mettenberger was seen by Dr. Malik, who reiterated his March 1998 diagnosis of "probable multiple sclerosis." (Tr. 310-12.)  Upon examination, Dr. Malik noted that her "[m]uscle tone and mass [were] normal"; her strength was "symmetric at 5/5 in the upper and lower extremities both proximal and distal"; her rapid "alternating movements and finger to nose testing [were] normal"; her "[s]tance and gait [were] normal; she could "stand on tiptoe and heel"; she was "[a]ble to walk heel-to-toe without difficulty"; she had a normal "arm swing"; and her "[s]ensory examination [was] normal to touch, pinprick." (Tr. 311.)  Dr. Malik further observed "[f]ine tremulousness" in finger-to-nose testing," that Mettenberger had experienced over the "past few years." *Id*.  Dr. Malik continued to treat Ms. Mettenberger from August 2003 until at least January of 2006. (Tr. 295-312.)

On April 28, 2006, Dr. Malik, in response to a letter received from Mettenberger's counsel, opined that she met the Listings for MS as of August 26, 2003. (Tr. 315-19.)

On May 4, 2006, Dr. Kuruc sent a letter to Mettenberger's attorney that stated the

following:

> Based on [Mettenberger's] symptoms and conclusions that have been made by
> Dr. Malik locally and Dr. Heyman at the University of Pittsburgh as well as
> reviewing the patient's present clinical state, this physician believes that the
> patient is disabled and unable to participate even in sedentary work because of the
> progressive symptoms caused by multiple sclerosis.  Furthermore, based on a
> review of records dating back to 1998, it appears that the patient's symptoms that
> support a disability request pre-date 30 September 1999 in onset.  The actual date
> of onset, cannot be determined by this examiner from the review of the records.

(Tr. 321-22.)

***Hearing Testimony***

No testimony was heard at the hearing.  (Tr. 32-34.)

### III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the

time of disability and must prove an inability to engage "in substantial gainful activity by reason

of any medically determinable physical or mental impairment," or combination of impairments,

that can be expected to "result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months."  20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

---

[1]  The entire five-step process entails the following: First, the claimant must demonstrate
that she is not currently engaged in "substantial gainful activity" at the time she seeks
disability benefits. Second, the claimant must show that she suffers from a "severe
impairment" in order to warrant a finding of disability.  A "severe impairment" is one
which "significantly limits ... physical or mental ability to do basic work activities."
Third, if the claimant is not performing substantial gainful activity, has a severe
impairment that is expected to last for at least twelve months, and the impairment meets a
listed impairment, the claimant is presumed to be disabled regardless of age, education or
work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the
claimant's impairment does not prevent her from doing her past relevant work, the
claimant is not disabled. For the fifth and final step, even if the claimant's impairment
does prevent her from doing her past relevant work, if other work exists in the national
economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*,
905 F.2d 918, 923 (6th Cir. 1990).

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while he or she was disabled or within twelve months of the date the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Mettenberger was insured on her alleged disability onset date, June 11, 1999 and remained insured through September 30, 1999.  (Tr. 23.)  Therefore, in order to be entitled to POD and DIB, Mettenberger must establish a continuous twelve month period of disability commencing between June 11, 1999 and September 30, 1999.  Any discontinuity in the twelve month period precludes an entitlement to benefits.  *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

### IV.  Summary of Commissioner's Decision

The ALJ found Mettenberger established medically determinable, severe impairments, but her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Mettenberger was able to perform her past work activities, retained Residual Functional Capacity ("RFC") for the full range of medium work, and, therefore, was not disabled.

### V. Standard of Review

The court's review of the Commissioner's decision is limited to determining whether there is "substantial evidence" to support the Commissioner's decision and whether the Commissioner employed proper legal standards in reaching his or her conclusion.  Because the petitioner's request for review has been rejected, the decision of the ALJ is the final decision of the Commissioner and is subject to this court's review.  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular

7

conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *see also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  If substantial evidence for the Commissioner's decision exists, the Court's "inquiry must terminate" and the final decision of the Commissioner must be affirmed.  *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966).

Furthermore, if the Commissioner's decision is supported by substantial evidence, the Commissioner's determination must stand regardless of whether the reviewing court would resolve the disputed issues of fact differently.  *See Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

### VI.  Analysis

Mettenberger claims the ALJ erred by (1) failing to adopt the opinion of a treating physician and (2) failing to conduct a proper analysis of Mettenberger's MS.  Each claim will be discussed in turn.

### *Treating Physician*

Mettenberger argues that the ALJ erred by rejecting the May 4, 2006 opinion of Dr. Kuruc, a treating physician, which she suggests should have been accorded controlling or substantial weight.  However, in order for the treating physician's opinion to be entitled to substantial weight, the opinion must be more than a conclusory statement and must be supported by clinical or diagnostic findings.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981).  Where no such medical documentation is presented and there is no explanation of a nexus between the conclusion of disability and physical findings, the ALJ may choose to disregard the treating physician's opinion.  *See Landsaw v. Sec'y of Health & Human*

8

*Servs.*, 803 F.2d 211, 212 (6ᵗʰ Cir. 1986).  The ALJ may disregard the opinion of a treating

physician that is not supported by adequate medical data, including medical signs and laboratory

evidence.  *Id.*  The ALJ need not credit a treating physicians conclusion which does not contain

substantiating medical data.  *See Villarreal v. Sec'y of Health & Human Servs.,* 818 F.2d 461,

463 (6ᵗʰ Cir. 1987).

Mettenberger's argument is without merit.  First, an opinion that a claimant is disabled

does not constitute a "medical opinion."  Statements from any medical source that the claimant is

"unable to work" are not medical opinions, but rather comments on an issue reserved to the ALJ.

*See* 20 C.F.R. §§ 404.1527(e); SSR 96-5p.  Opinions on issues reserved to the ALJ are given no

special significance.  *Id*.  Therefore, the ALJ did not err by rejecting Dr. Kuruc's opinion that

Mettenberger was disabled.[2]

In addition, the ALJ, in fact, credited Dr. Kuruc's opinion that some of Mettenberger's

symptoms pre-dated September 30, 1999 and that her symptoms became progressively worse.

(Tr. 20.)  However, the ALJ found that "the record does not reflect that the claimant's MS was

causing the degree of functional limitation necessary to support a finding of disability" prior to

her last insured date.  *Id*.  The ALJ noted the following evidence to support this conclusion:

Mettenberger was "doing well" in March of 1999; she engaged in substantial gainful activity for

a time into 2002; she was capable of walking without difficulty in June 1999; she had a normal

stress test in July of 1999 with an adequate exercise capacity; in September of 2000, she

---

[2]  Although Dr. Kuruc opined that Mettenberger, based on the opinions of Dr. Malik and
Dr. Heyman, was disabled, he further stated that the actual onset date *cannot* be
determined.  (Tr. 322) (Emphasis added).  Thus, Dr. Kuruc's disability opinion, even if it
were entitled to any significant weight, does not necessarily support Mettenberger's
position that she was disabled before her date last insured.

described her general health as "good" with few ocular complaints; and Dr. Malik, one of the

physicians who treated Mettenberger's MS, opined that she had not become disabled until

August of 2003 – four years after her date last insured.  (Tr. 20-21.)

In sum, to the extent that Dr. Kuruc's opinion was a conclusory opinion on an issue

reserved for the ALJ, the ALJ is not required to defer to that opinion.  Moreover, the ALJ

examined Dr. Kuruc's opinion in light of the available medical data and determined that the

opinion was not supported by the data.  Under these circumstances, the opinion of a treating

physician need not be given controlling weight.  The ALJ did not err, therefore, in rejecting Dr.

Kuruc's opinion that Mettenberger was disabled.

***Multiple Sclerosis Analysis***

Mettenberger argues that the ALJ failed to conduct a proper longitudinal analysis of her

MS and suggests that the ALJ should have conducted an analysis similar to one discussed by the

Eastern District Court of Michigan in *Anderson v. Comm'r of Soc. Sec.*, 440 F. Supp.2d 696

(E.D. Mich. 2006).

In *Anderson*, the court stressed the relapsing and remitting nature of MS and explained

that MS requires a longitudinal evaluation, because persons suffering from MS may experience

disabling symptoms followed by periods of remission where the symptoms subside.  *Id*. at 699.

However, *Anderson* is distinguishable from the present case because the ALJ did not find that

Mettenberger was experiencing a period of remission, but rather that Mettenberger's limitations

did not reach a disabling level of severity before her date last insured.  (Tr. 22.)  The mere fact

that Mettenberger was diagnosed with MS prior to her date last insured does not establish that

she was disabled, as a diagnosis alone does not indicate the functional limitations caused by the

10

impairment.  *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146,151 (6th Cir. 1990)

(diagnosis of impairment does not indicate severity of impairment); *Bradley v. Sec'y of Health &*

*Human Servs.*, 862 F.2d 1224,1227 (6th Cir. 1988) (signs of arthritis not enough; must show that

condition is disabling); *Kopek v. Sec'y of Health & Human Servs.*, 1992 U.S. App. LEXIS 25939

at *8  (6th Cir. 1992) ("In this Circuit . . . a person afflicted with MS is not *per se* disabled under

the social security regulations.")  Furthermore, substantial evidence supports the ALJ's finding

that Mettenberger had not experienced debilitating symptoms at any time before her insured

status expired.

Thus, Mettenberger's argument that the ALJ should have found that she was merely in a

period of remission is without merit.

## VII.  Decision

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner

supported by substantial evidence.  Accordingly, the decision of the Commissioner should be

AFFIRMED and judgment entered in favor of the defendant.


s/ Nancy A. Vecchiarelli
NANCY A. VECCHIARELLI
U.S. MAGISTRATE JUDGE

Date: March 27, 2008


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within ten (10) days after being served with a copy of this Report and
Recommendation.  Failure to file objections within the specified time may waive the right
to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir.
1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

11